ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
David M. Seiter
Joshua Taylor
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court



## In the
## Indiana Supreme Court

No. 32S04-1102-CR-117

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

AMANDA RENZULLI,

*Appellee (Defendant below).*

Appeal from the Hendricks Superior Court, 32D04-0904-CR-194
The Honorable Mark A. Smith, Judge

On Petition to Transfer from the Indiana Court of Appeals, 32A04-1003-CR-194

**December 29, 2011**

**David, Justice.**

We have granted transfer in this case to address whether a police officer had reasonable suspicion to stop a vehicle based on a concerned citizen's tip of a possibly intoxicated driver. At 1 a.m. on April 23, 2009, a 911 call was made by a motorist who identified himself and provided his phone number. The caller complained that he had been following a driver of a blue Volkswagen who had been driving erratically and was going to "kill somebody." The caller told the 911 operator the vehicle just pulled into a BP Gas Station. Within 90 seconds, an officer

arrived at the BP Gas Station and observed the blue Volkswagen. With this corroboration, the officer made an investigatory stop of Amanda Renzulli. The trial court granted Renzulli's motion to suppress the evidence on the grounds that there was no reasonable suspicion for the stop. We hold that the police officer in this instance did have reasonable suspicion and reverse the trial court.

## Facts and Procedural History

The facts of this case are not in dispute. At approximately 1:00 a.m. on April 23, 2009, Andrew Davies called 911 to report a possibly intoxicated driver. Upon calling 911, Davies identified that he was on U.S. 40 in Plainfield. Davies then stated, "There is a uh, drunk driver in front of me, he is all over the road he is going to kill somebody," and thereafter told the operator, "[h]e run over the cement uh, center of …" Davies then identified the car as "just pulling into a BP Gas Station and it's a blue Jetta," and later identified it as the BP Gas Station at U.S. 40 and Perry Road. Davies stated he was unable to get a license plate number because he "stayed away from it," and then identified the car with a different make, "[i]t looks like a Volkswagen Passat I believe it is." He then proceeded to give his name and telephone number to the 911 dispatcher.

> Shortly thereafter, the operator dispatched her information as follows:
>
> (Inaudible) all units stand by for broadcast, Plainfield units in the area of BP North, U.S. 40 and Perry Road, said a blue Jetta or a Passat that pulled into the BP Gas Station, vehicle described before pulled in there as weaving all over the road and had ran over the curb. (Inaudible) behind the vehicle, transcribed communications at 104.[1]

Sergeant Schnarr of the Plainfield Police Department was the first on the scene at the BP Gas Station.[2] Schnarr exited his vehicle and began to approach a blue Volkswagen.[3] At that moment, the vehicle began to back out of the parking spot, and Sergeant Schnarr asked the vehicle to stop. Schnarr then began speaking with the driver of the vehicle, identified as Amanda Renzulli. At that time, Officer Brian Stewart of the Plainfield Police Department arrived and

---

[1] In the 911 tape played for the trial court, 90 seconds elapses between the call and officers arriving on the scene at the BP Station.

[2] Sergeant Schnarr was unable to testify at the suppression hearing because he was at Camp Atterbury doing advanced sniper training. Officer Brian Stewart, who responded shortly after Schnarr, provided testimony at the hearing.

[3] Officer Stewart was uncertain whether there were other blue Volkswagens in the parking lot at the time.

2

approached Renzulli and noticed she had bloodshot eyes, slurred speech, a strong odor commonly associated with alcohol, and poor manual dexterity. Stewart then administered three field sobriety tests on Renzulli. Renzulli failed each test. Renzulli was then arrested and taken for a blood draw to determine her blood alcohol content, which showed a blood alcohol concentration of .22 percent. Based on these facts, Renzulli was charged with operating a vehicle while intoxicated as a class D felony due to a prior conviction from 2005. Renzulli filed a motion to suppress the evidence, which the trial court granted. The State filed a motion to dismiss the case due to the suppression ruling and filed their notice of appeal.

## Standard of Review

Pursuant to Indiana Code section 35-38-4-2(5), the State appeals from the suppression of evidence, which effectively precludes further prosecution. In reviewing a trial court's motion to suppress, we determine whether the record discloses "substantial evidence of probative value that supports the trial court's decision." State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). We do not reweigh the evidence, but consider "conflicting evidence most favorably to the trial court's ruling." Id. When the State appeals from a negative judgment, as here, it "must show that the trial court's ruling on the suppression motion was contrary to law." State v. Washington, 898 N.E.2d 1200, 1203 (Ind. 2008).

## A. Investigatory Stop

Our analysis begins with Article 1, Section 11 of the Indiana Constitution:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Investigatory stops invoke the Article 1, Section 11 protections of the Indiana Constitution. Rutledge v. State, 426 N.E.2d 638, 642 (Ind. 1981). An individual's right of free movement under Article 1, Section 11 is not absolute, for society has a right to protect itself. Williams v. State, 261 Ind. 547, 551, 307 N.E.2d 457, 460 (Ind. 1974). In balancing these factors, our courts gauge the reasonableness of an investigatory stop by striking "'a balance between the public interest [behind the investigation] and the individual's right to personal security free from arbitrary interference from law officers.'" Platt v. State, 589 N.E.2d 222, 225

3

(Ind. 1992) (alteration in original) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)).

An investigatory stop of a citizen by a police officer does not violate that citizen's constitutional rights if the officer has a reasonably articulable suspicion of criminal activity. Lampkins v. State, 682 N.E.2d 1268, 1271 (Ind. 1997) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968); United States v. Hatch, 827 F. Supp. 536, 541 (N.D. Ind. 1993)). Reasonable suspicion is a "somewhat abstract" concept that is not readily reduced to a "neat set of legal rules." United States v. Arvizu, 534 U.S. 266, 274 (2002). As the Court of Appeals has written on the topic,

> A police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot."

Combs v. State, 851 N.E.2d 1053, 1057 (Ind. Ct. App. 2006).

In Indiana, we have said that reasonable suspicion does not rise to the level of probable cause. Platt v. State, 589 N.E.2d 222, 226 (Ind. 1992). When making a reasonable suspicion determination, reviewing courts examine the "totality of the circumstances." Id. In Kellems v. State, 842 N.E.2d 352 (Ind. 2006), rev'd on other grounds, 849 N.E.2d 1110 (Ind. 2006), and its companion case Sellmer v. State, 842 N.E.2d 358 (Ind. 2006), we decided whether a telephone tip to the police provided the reasonably articulable suspicion of criminal activity necessary to justify an investigatory stop. In those cases, "we followed the directive of the Supreme Court that reasonable suspicion determinations are to be made 'by looking at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.'" Kellems, 842 N.E.2d at 354 (quoting Arvizu, 534 U.S. at 273).

### B. Concerned Citizen Tip

Courts across this country evaluate the quality of information depending on if it was from a professional or criminal informant, or if it was from a cooperative citizen who witnessed or fell victim to a crime. We have addressed the issue in Pawloski v. State, 269 Ind. 350, 380 N.E.2d 1230 (1978). Reliability of the professional informant or anonymous tipster generally must be

4

established by reference to underlying facts and circumstances which indicate that the information is trustworthy. Id. at 354, 380 N.E.2d at 1232. Our requirement for corroboration is necessitated because this type of information may be unreliable or self-serving, especially if given in return for favors such as money or leniency in possible criminal prosecution. Id. On the other hand, we recognize a concerned citizen tip is different. This tip is made up of people who may have been victims of crime or have witnessed a crime. Id. These individuals generally come forward with information out of a spirit of good citizenship and a desire to help law enforcement. Id. Some jurisdictions have therefore held informants of this type are considered more reliable. Id. In Kellems, we again reaffirmed our belief that there "may well be greater indicia of reliability in the report of the 'concerned citizen' as distinguished from the 'professional informant' – though again the totality of the circumstances controls." 842 N.E.2d at 356. These concerned citizens are usually one-time informants, and no basis exists from prior contacts to determine their reliability, such as in the case of an undercover police informant. Kellems, 842 N.E.2d at 356.

The present case deals with a concerned citizen's tip to police. Although the concerned citizen in the case before us gave his name to the 911 dispatch operator, we can also analogize this case with cases involving an "anonymous tip." The federal standard of anonymous tip validity was set forth in Alabama v. White, 496 U.S. 325 (1990). The United States Supreme Court found the anonymous tip in that case did provide reasonable suspicion for a Terry stop. The Court reasoned,

> What was important was the caller's ability to predict [White's] future behavior, because it demonstrated inside information—a special familiarity with [White's] affairs. The general public would have had no way of knowing that [White] would shortly leave the building, get into the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.

White, 496 U.S. at 332.

Thus, in White, the factors upholding the anonymous tip were the officers' observations that validated the information received, substantiating the reasonable suspicion requirement.

In Kellems, we found the United States Supreme Court held that such tips from an identified informant may be sufficiently reliable to justify an investigatory stop. Kellems, 842 N.E.2d at 355. *Terry* stops have a limited scope and purpose, "not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence. . . ." Id. (citing Adams v. Williams, 407 U.S. 143, 146–147 (1972)). As we wrote then, "since reasonable suspicion is all that is necessary to support a *Terry* stop and it 'is a less demanding standard than probable cause . . . [t]he Fourth Amendment requires [only] "some minimal level of objective justification" for making the stop.'" Kellems, 842 N.E.2d at 355 (alterations in original) (quoting White, 496 U.S. at 329–330).

In Indiana, the Court of Appeals has held that an anonymous tip, or a tip from an unidentified informant, "can supply information that gives police reasonable suspicion." Bogetti v. State, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000). Furthermore, "[a] tip will be deemed reliable when an individual provides specific information to police officers such as a vehicle description." Id. In Bogetti, several police officers were dining at a McDonald's restaurant. Id. at 877. During the meal, a man approached one of the officers and informed him that another individual, Bogetti, had just exited the restaurant, drove away in a white semi, and "may be intoxicated." Id. at 877–78. Immediately thereafter, the officers left the restaurant and began to follow the white semi. Id. at 878. The officers stopped Bogetti and smelled alcohol on his breath. Id. After conducting field sobriety tests, Bogetti was arrested and charged with driving while intoxicated. Id. The Court of Appeals held that "facts possessed by the Officers gave rise to the reasonable suspicion that the truck was being operated by an impaired driver and were sufficient to sustain the legality of the investigatory stop." Id. at 879.

Although we do not believe this case involves an anonymous tip, we still reach the same conclusion through the Bogetti analysis—the tip was enough to permit a brief *Terry* stop. Davies provided independent indicia of reliability. He provided the color and make of the vehicle, at the location the police arrived, at a time of night with minimal vehicular traffic, and importantly, the police officer arrived almost immediately after the 911 dispatch. Because we believe Davies's tip provided enough independent reliability, we need not rely on Renzulli's future behavior.

6

Similar to the officers in <u>Bogetti</u> failing to stop and question the unidentified informant, the officers in the present case did not speak with Davies. However, the circumstances of this case warranted an immediate response by the police for the safety of the general public, as well as for the safety of Renzulli herself. There are legitimate State concerns in deterring driving while intoxicated. <u>Bogetti</u>, 723 N.E.2d at 878 (citing <u>State v. Garcia</u>, 500 N.E.2d 158, 161 (Ind. 1986)).

> [T]he average number of deaths per year for the last ten (10) years attributable to drunk drivers in the United States is 25,000. The Supreme Court of the United States has recognized that the current state of affairs has resulted in such terrible carnage wreaked upon society by drunk drivers that the slaughter exceeds that of all our wars.

<u>Garcia</u>, 500 N.E.2d at 161 (citing <u>South Dakota v. Neville</u>, 459 U.S. 553, 558 (1983)). The U.S. Supreme Court revisited the dangers of drunk driving in <u>Michigan Department of State Police v. Sitz</u>, 496 U.S. 444 (1990). It pointed out that over 25,000 deaths, one million injuries, and $5 billion worth of property damage is caused by drunk driving every year. <u>Id.</u> at 451.

### The Stop of Renzulli[4]

In the present case, the police officers had reasonable suspicion to conduct an investigatory stop of Renzulli's vehicle. We first reiterate that we agree with the State and the Court of Appeals that the caller should be considered an identified informant or concerned citizen, not an anonymous tip. The caller identified himself as Andrew Davies and gave his telephone number to the 911 dispatch officer. He next described the vehicle as a blue Volkswagen Jetta or a Volkswagen Passat. Davies described where the vehicle was located, "just pulling into a BP Gas Station." Davies stated he was unable to obtain the license plate of the vehicle because he "stayed away from it" due to its erratic driving. And he also described the criminal activity observed, "he is all over the road he is going to kill somebody," and "[h]e run over the cement uh, center of . . ."

---

[4] The Court of Appeals opinion affirmed the trial court. Judge Riley addressed the suppression ruling. <u>State v. Renzulli</u>, 935 N.E.2d 200, 201–204 (Ind. Ct. App. 2011). Judge Mathias concurred in result and concluded sua sponte that the State cannot bring an appeal following the denial of a motion to correct error. <u>Id.</u> at 204–207. Judge Bradford dissented. <u>Id.</u> at 207–212. We agree with Judge Bradford that Renzulli did not challenge the timeliness of the State's notice of appeal. <u>Id.</u> at 208. Therefore, we agree with Judge Bradford that that issue has been waived and we find no need to write on the jurisdictional claim.

7

In looking at the totality of the circumstances, we hold that the police officers had reasonable suspicion to briefly detain Renzulli for investigatory purposes. The facts known to Sergeant Schnarr were that a blue Volkswagen of a suspected drunk driver had just pulled into the BP Gas Station before Sergeant Schnarr arrived at 1:00 a.m. Based on the time of the evening, location, and specific vehicle color and make, and the almost immediate response by Sergeant Schnarr, we conclude that reasonable suspicion did exist to detain Renzulli for investigatory purposes. As previously discussed, an investigatory stop requires only reasonable suspicion, a considerably lesser standard than probable cause. Bridgewater v. State, 793 N.E.2d 1097, 1100 (Ind. Ct. App. 2003). It was Officer Schnarr's conversation with Renzulli and his observations of her that gave him probable cause to then arrest Renzulli.

We disagree with the dissent that this case is distinguishable from Kellems. Here, just as in Kellems, there was enough corroboration of the tip by the police to determine they had reasonable suspicion for an investigatory stop. In Kellems, the officer never observed the driver commit any traffic violations. 842 N.E.2d at 354. Rather, the corroboration was solely matching the car description and license plate number given by the caller. Id. In fact, Kellems was not intoxicated and was arrested for operating a vehicle as a habitual traffic offender. Id. Similarly, in the present case, the officer did not observe the driver commit any traffic violations, but did corroborate the tip by observing the Blue Volkswagen at the specifically identified BP Gas Station at 1:00 a.m., within 90 seconds of the call, made by the tipster who gave his name and telephone number.

Renzulli argues that the caller was not able to be independently verified to distinguish him from a prankster or an imposter. Renzulli argues that the caller did not identify himself in such a way as to place his credibility at risk or to subject himself to criminal penalties. Renzulli cites State v. Glass, 769 N.E.2d 639 (Ind. Ct. App. 2002), as the dispositive case at hand. However, in Glass, the officer received a dispatch at 1:30 p.m. advising him of a "suspicious vehicle for reckless driving." Id. at 640. The tipster in Glass was unidentified. Id. at 641. Further, in Glass, the record contained no description of the vehicle. There is no mention of vehicle color or make of the car, location or direction of travel, nor any elapsed time between the 911 dispatch and the stop. Id. at 643–44. The record in Glass was the police officer's testimony that the dispatcher "gave a description of the vehicle." Id. at 643. The record contains no

8

information on what that description actually was.  Id.  We find Glass to be distinguishable as there are more independent indicia of reliability in the present case, including the time, location, make, and color of the vehicle Renzulli was driving.

Renzulli also argues that the caller, Davies, did not identify the correct gender of the driver of the blue Volkswagen.  Davies used the descriptor "he" six times when describing the driver of the blue Volkswagen to the 911 operator.  Renzulli cites Holly v. State, 918 N.E.2d 323 (Ind. 2009), for the position that once Sergeant Schnarr realized Renzulli was female, Schnarr should have discontinued his investigative stop.  In Holly, Officer Jason Ross was conducting a routine patrol in his police car when he ran a license plate of a vehicle traveling in front of him.  Id. at 324.  His license plate check identified that the vehicle was registered to an African-American female named Terry Sumler, whose driver's license was suspended.  Id. at 325.  Based on that information, Officer Ross initiated a traffic stop of the vehicle.  Id.  Upon approaching the vehicle, Officer Ross observed the driver was a male identified as Damen Holly.  Id. at 324.  Holly held that once Officer Ross observed the driver to be a male, he had no reason for additional inquiry, and no longer had reasonable suspicion that criminal activity was afoot.  Id. at 325.

We find Holly distinguishable.  The descriptor "he" is a commonly used male pronoun used in unisex form.  The time was 1:00 a.m. when Davies called 911.  He was traveling at such a distance behind Renzulli to not be able to identify her license plate.  We do not believe Davies's use of the word "he" in this circumstance indicated he had or had not identified the gender of the driver.  In Holly, on the other hand, Officer Ross *knew* he was looking for a female driver based upon an official license check.

**Conclusion**

Based on the totality of the circumstances, we hold that Davies supplied sufficient information to establish reasonable suspicion to support the investigatory stop.  Those circumstances include the time of day with little vehicular traffic, vehicle color and make, location of the vehicle, and almost immediate response and arrival at the scene by the police. We further arrive at this conclusion because Davies identified himself and provided a telephone

9

number.[5]  We hold in this case with these facts, based on the totality of the circumstances, the police had reasonable suspicion based on articulable facts to briefly detain Renzulli for investigatory purposes.

Shepard, C.J. and Sullivan, J., concur.

Dickson, J., concurs in result without opinion.

Rucker, J., dissents with separate opinion.

---

[5] It may be advisable in the future for 911 operators to take further identifying information from concerned citizen tips.  Information such as date of birth and home address, along with the name and telephone number of a concerned citizen would give greater reliability to these types of tips.  This information would potentially place the concerned citizen under penalties of false informing and would help alleviate the concern of a possible imposter or prankster.

**Rucker, J., dissenting.**

After conducting an evidentiary hearing, the trial court granted Renzulli's motion to suppress the evidence. The trial court concluded that the officers responding to the 911 call did not "establish[] an independent and objective basis to create a reasonable suspicion of criminal behavior necessary for an investigatory stop." Appellant's App. at 18. I agree with the trial court and therefore respectfully dissent.

This Court has previously examined a tip provided by a concerned citizen and found it sufficient to create reasonable suspicion where the caller provided additional information to police about the vehicle and its occupants which the police corroborated. See Kellems v. State, 842 N.E.2d 352, 353 (Ind. 2006) (holding that a "tip from an identified informant or concerned citizen *coupled with some corroborative police investigation* is sufficient to create reasonable suspicion for an investigative stop" (emphasis added)). By contrast there was minimal to no "corroborative police investigation" in this case. The sole officer testifying at the suppression hearing noted that he did not witness the vehicle make any maneuvers, other than when it began backing out of the gas station parking space just prior to being ordered to stop. The officer testified that he did not know whether other blue cars or Volkswagens were located in the parking lot of the gas station at the time Renzulli was stopped. And the officer never corroborated whether Renzulli's car was the same car referred to by the 911 caller. Further the 911 caller identified the errant driver as "he" and obviously Renzulli is a woman.

Our standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). The record must disclose substantial evidence of probative value that supports the trial court's decision. Id. We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. Id. Further, when appealing the trial court's grant of a motion to suppress, the State appeals from a negative judgment and must show that the ruling was contrary to law. State v. Augustine, 851 N.E.2d 1022, 1025 (Ind. Ct. App. 2006). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. Id. As is apparent by the majority's exhaustive analysis,

this is a close case on the facts.  And because this is so, I side with the trial court.  <u>Cf.</u> <u>Quirk</u>, 842 N.E.2d at 343 (affirming trial court's denial of defendant's motion to suppress drugs discovered in defendant's truck following a routine traffic stop).