**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 26 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY D. WEBSTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1203-CR-109 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1009-FB-109

**September 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Gregory Webster appeals from his convictions for Class A misdemeanor marijuana possession[1] and Class B felony cocaine possession,[2] contending that the trial court abused its discretion in admitting evidence seized from his person. We affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 4:30 to 4:45 p.m. on September 3, 2010, South Bend Police Corporal Ronald Glon was patrolling Howard Park on a T-3 Motion, a three-wheeled electric vehicle "kind of like one of those two-wheel things that you stand on[.]" Tr. p. 177. Corporal Glon encountered two female walkers who advised him that a man sitting on a park bench was "'yelling and screaming at the kids and the mothers in the playground area.'" Tr. p. 178. The walkers pointed to the only person in the park that was sitting on a bench, who was "a couple hundred feet [away], maybe." Tr p. 197.

Corporal Glon activated the lights on his T-3 Motion and approached the individual sitting on the bench, who was Webster. As Corporal Glon pulled up, he asked Webster for identification; Webster responded by saying, "'I'm just leaving.'" Tr. p. 182. As Webster spoke with him, Corporal Glon detected a "strong odor" of alcohol on Webster's breath, noticed that his eyes were watery and bloodshot, and noticed that his speech was slurred. Tr. p. 183. Corporal Glon administered a portable breath test to Webster, which indicated the presence of alcohol. Corporal Glon advised Webster that

---

[1] Ind. Code § 35-48-4-11(1) (2010).

[2] Ind. Code § 35-48-4-6(a), -6(b)(2)(B)(ii) (2010).

he was under arrest for public intoxication. When Corporal Glon patted Webster down, he found a baggie containing marijuana in his right front pocket and later found a baggie containing cocaine in his right shoe.

On September 5, 2010, the State charged Webster with Class B misdemeanor public intoxication, Class A misdemeanor marijuana possession, and Class B felony cocaine possession. On November 15, 2010, Webster filed a motion to suppress evidence, which motion the trial court denied on January 14, 2012. On January 18, 2012, a jury found Webster guilty of marijuana possession and cocaine possession. On February 15, 2012, the trial court sentenced Webster to one year of incarceration for marijuana possession and six years for cocaine possession, the sentences to run concurrently.

## DISCUSSION AND DECISION

### Whether the Trial Court Abused its Discretion
### in Admitting Evidence Seized from Webster's Person

Webster frames his appeal as a challenge to the denial of his motion to suppress evidence of illegal drugs found on his person. However, because a trial has been held, the issue is more appropriately addressed as a challenge to the admission of evidence. We will reverse a trial court's ruling on the admissibility of evidence only when the court has abused its discretion. *Kelley v. State*, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005). An abuse of discretion may occur if a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. Regarding the "abuse of discretion"

3

standard generally, the Indiana Supreme Court has observed, "to the extent a ruling is based on an error of law or is not supported by the evidence it is reversible, and the trial court has no discretion to reach the wrong result." *Pruitt v. State*, 834 N.E.2d 90, 104 (Ind. 2005).

**Fourth Amendment**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961)] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

> [T]here are three levels of police investigation, two which implicate the Fourth Amendment and one which does not. First, the Fourth Amendment requires that an arrest or detention for more than a short period be justified by probable cause. *Woods v. State*, 547 N.E.2d 772, 778 (Ind. 1989). Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). Second, it is well-settled

4

Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion. *Woods*, 547 N.E.2d at 778. Finally, the third level of investigation occurs when a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop. In this type of "consensual encounter" no Fourth Amendment interest is implicated. *See Molino v. State*, 546 N.E.2d 1216, 1218 (Ind. 1989) (citing *Florida v. Rodriguez*, 469 U.S. 1, 5-6, 105 S. Ct. 308, 83 L. Ed. 2d 165 (1984)).

*Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *trans. denied*. "'[S]ince reasonable suspicion is all that is necessary to support a *Terry* stop and it "is a less demanding standard than probable cause … [t]he Fourth Amendment requires [only] 'some minimal level of objective justification' for making the stop.""" *State v. Renzulli*, 958 N.E.2d 1143, 1148 (Ind. 2011) (citations omitted).

Webster contends that Corporal Glon, acting only on an allegedly anonymous tip from the walkers, lacked reasonable suspicion to briefly detain him for investigatory purposes. We disagree, as we conclude that several factors tend to establish the reliability of the tip on which Corporal Glon acted. As an intial matter, a face-to-face report is not truly anonymous, despite the fact that Corporal Glon did not get the names of either of the walkers. A face-to-face tipster has surrendered his or her anonymity. "[C]itizens who personally report crimes to the police thereby make themselves accountable for lodging false complaints." *U.S. v. Christmas*, 222 F.3d 141, 144 (4th Cir.

5

2000) (citing *Illinois v. Gates*, 462 U.S. 213, 233-34 (1983)). It should be noted that the walkers' tip was related when the trio was only "a couple hundred feet" from Webster, making it more likely that the walkers would be held to account if the tip turned out to be fabricated. Moreover, Corporal Glon was able to judge the walkers' credibility first-hand. When an informant relates information to the police face-to-face, the officer has an opportunity to assess the informant's credibility and demeanor. *Id.* Finally, the walkers specifically pointed out Webster to Corporal Glon, which is a least as good as providing a detailed description. Under Indiana law, "'[a] tip will be deemed reliable when an individual provides specific information to police officers such as a vehicle description.'" *State v. Renzulli*, 958 N.E.2d 1143, 1148 (Ind. 2011) (quoting *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000)). In cases such as this, where the suspect is specifically pointed out to police, reliability is provided without need for specific information about how he may be identified or located. We conclude that Corporal Glon had ample reasonable suspicion to briefly detain Webster for investigatory purposes, which led to his arrest and the discovery of the contraband. Consequently, the trial court did not abuse its discretion in admitting evidence of the narcotics found on Webster's person.

We affirm the judgment of the trial court.

ROBB, C.J., and BAKER, J., concur.