BAILEY, Judge,
concurring in result.
The lead opinion holds as unconstitutional the fruits of the search of Vanderkolk’s room on the theory that the Community Corrections Officers’ search of the house was unreasonable. While I concur in the result, I reach my conclusion on a different basis.
Under the Fourth Amendment to the United States Constitution, as interpreted by our courts, warrantless searches and seizures inside a home are per se unreasonable except in certain circumstances. Krise v. State, 746 N.E.2d 957, 961 (Ind.2001) (citing Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Where a search is conducted without a warrant, the State must bear the burden of proving that an exception to the warrant requirement existed at the time of the search. Id. There are numerous such exceptions. For example, evidence of a crime in plain view of a law enforcement officer is one such exception. See, e.g., Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and Krise, supra. So, too, there is an exception to the warrant requirement where probable cause and exigent circumstances exist to permit a warrantless search. See, e.g., Welsh v. Wisconsin, 466 U.S. 740, 740-41, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (noting that “no exigency is created simply because there is probable cause that a serious crime has been committed [and] application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause [for] only a minor offense”).
*592 “A probationer’s home, like anyone else’s, is protected by the Fourth Amendment’s requirement that searches be reasonable.” Hensley v. State, 962 N.E.2d 1284, 1288 (Ind.Ct.App.2012) (citations and quotations omitted). And while voluntary and knowing consent to a search is another exception to the warrant requirement, Krise, 746 N.E.2d at 961, this court has held that waivers to Fourth Amendment rights as part of a probation program agreement are unconstitutional because such waivers allow probation officers to perform constitutionally unreasonable searches. Hensley v. State, 962 N.E.2d at 1286 n. 2. Special needs in administrative or other contexts may also permit a search with only reasonable suspicion that criminal activity may be occurring; most notably for our purposes, this has been held to be the case in the context of probation and community corrections programs. See U.S. v. Knights, 534 U.S. 112, 121-22, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (holding that a search of a probationer’s residence supported by reasonable suspicion is valid even when no probationary purpose is served); Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (holding as valid a search for probationary purposes and supported by reasonable suspicion).
Reasonable suspicion does not rise to the level of probable cause. State v. Renzulli, 958 N.E.2d 1143, 1146 (Ind.2011). In determining whether officers had reasonable suspicion, a court’s inquiry focuses on whether officers have “a particularized and reasonable basis for suspecting legal wrongdoing.” U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citations and quotations omitted). This requires more than “an inchoate and unparticularized suspicion or ‘hunch,’ ” but rather “specific reasonable inferences which [a law enforcement officer] is entitled to draw from the facts in light of his experience.” Terry v. Ohio, 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Courts look to the totality of the circumstances in reaching a determination on the existence of reasonable suspicion. Renzulli, 958 N.E.2d at 1146.
When reviewing a trial court’s grant of a motion to suppress evidence, our task on review is to determine “whether the record contains ‘substantial evidence of probative value that supports the trial court’s decision.’ ” State v. Gilbert, 997 N.E.2d 414, 417 (Ind.Ct.App.2013) (quoting State v. Washington, 898 N.E.2d 1200, 1203 (Ind.2008)). We do not reweigh evidence, and because the State appeals from a negative judgment, it must show that the trial court’s decision to suppress evidence was contrary to law. Id. While we defer to the trial court’s decisions on factual matters, we review de novo the trial court’s determination of reasonable suspicion for a war-rantless search. Sanders v. State, 989 N.E.2d 332, 334 (Ind.2013).
While Officer Rebecca Georgene did not testify at the hearing, the record suggests that she was the first of four Community Corrections Officers who made contact with Sullivan at his home. The other three other officers remained near their cars and out of view. The record then reveals that Officer Georgene signaled over the radio for Officers Adam Sowders, Kimberly Ledgerwood, and James Krogge to enter the house to conduct a protective sweep and search of the residence. After entering the house, Officer Sowders detected the scent of marijuana, and he saw Sullivan walking down the stairs that led to the attic where Vanderkolk’s bedroom was located. Sullivan indicated that he was checking to see whether Vanderkolk— whom he identified as his roommate — was present, but Vanderkolk was not there. Sullivan also indicated to the officers that his bedroom was on the first floor of the residence. Officers Sowders and Krogge conducted their sweep from the basement, *593 through the first floor, and finally up to Vanderkolk’s bedroom, after being informed that Sullivan’s roommate was not present and that the attic room did not belong to Sullivan.
Absent evidence of reasonable suspicion, the officers were without authority to search the home. Officer Georgene, who signaled other officers to search the home, did not testify at the suppression hearing; Officers Sowders and Krogge did. Officer Sowders testified that Community Corrections had no specific information on illegal activity at the residence, but that a search had not yet been performed of the house Sullivan and Vanderkolk shared. And we have no evidence in the record that establishes what, if anything, Officer Georgene detected that caused her to order the search. Nor is there evidence in the record that establishes that any of the officers received Sullivan’s consent to search separate from the waiver Sullivan signed as part of the Community Correction program requirements — a waiver that, as pri- or cases have held, does not specifically afford a blanket consent to search without at least reasonable suspicion on the part of law enforcement.
Thus, I would conclude that the State did not meet its burden of proving the existence of the kind of specific, articulable basis necessary to support a finding of reasonable suspicion sufficient to enter the house Vanderkolk shared with Sullivan. Accordingly, I would affirm the trial court’s suppression of the evidence seized from Vanderkolk’s room during both the protective sweep and the later search. But because I reach this conclusion on a slightly different basis from that of the lead opinion, I respectfully concur in result.