**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 04 2014, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL C. BORSCHEL**
Fishers, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRADLEY COCHRAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1312-CR-601 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara L. Cook Crawford, Judge
The Honorable Shatrese M. Flowers, Commissioner
Cause No. 49F09-1211-FD-76144

**September 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Bradley Cochran ("Cochran") was convicted after a jury trial of Driving While Suspended, as a Class A misdemeanor,[1] and Operating a Vehicle While Intoxicated, as a Class D felony.[2] Cochran was also adjudicated as a Habitual Substance Offender.[3] He now appeals.

We affirm.

## Issues

Cochran raises three issues for our review; we restate these as:

I. Whether the trial court abused its discretion when it did not, under the United States and Indiana Constitutions, suppress the results of a traffic stop;

II. Whether the trial court abused its discretion under Evidence Rule 404(b) when it admitted into evidence a BMV report of Cochran's driving history;

III. Whether there was sufficient evidence presented at trial to sustain Cochran's conviction for Operating a Vehicle While Intoxicated, as a Class D felony.

## Facts and Procedural History

On November 6, 2012, Edward Hampton ("Hampton") received a phone call telling him that Cochran, with whom Hampton shared a granddaughter, was parked in Hampton's yard in Indianapolis. Hampton was not expecting Cochran to be present at the home and did not want Cochran there; thus, Hampton left work to return home.

---

[1] Ind. Code § 9-24-19-3.

[2] I.C. § 9-30-5-3(a)(1) (2013).

[3] I.C. § 35-50-2-10(b) (2013).

Upon arriving at his home, Hampton found Cochran and Cochran's truck in the driveway. Six or seven empty beer cans were scattered in Hampton's yard and driveway, and Cochran was visibly intoxicated. Hampton asked Cochran to leave, and called police; Cochran picked up the beer cans and drove away, but came back soon afterward. Hampton again called police.

Indianapolis Metropolitan Police Department Officer Christopher Pritchett ("Officer Pritchett") was dispatched to respond to Hampton's call. Hampton informed Officer Pritchett of Cochran's name, provided a description of Cochran's pickup truck, and indicated Cochran's direction of travel.

Officer Pritchett soon located a vehicle matching the description of Cochran's truck and followed the truck several blocks. The truck, which Officer Pritchett later determined was occupied by Cochran, stopped for approximately one minute at a stop sign at an intersection. A car pulled up behind Officer Pritchett's squad car, so Officer Pritchett activated his lights. He then got out of his car and approached Cochran's vehicle.

Cochran was rummaging on the floor of his truck and did not notice Officer Pritchett's presence until Officer Pritchett tapped on the driver's window. Cochran explained that he was looking for cigarette rolling papers on the floor of the car. When Cochran opened the car window, Officer Pritchett smelled the scent of alcoholic beverages, and saw four unopened cans of beer in the front seat.

Officer Pritchett asked Cochran to step out of the car; Cochran had difficulty opening the car door. He also had difficulty getting out of the car without falling, frequently leaned

3

on the side of the car to remain standing, and occasionally would tilt over toward Officer Pritchett for support.

Officer Pritchett administered several field sobriety tests to Cochran; he failed each one. When asked if he would be willing to submit to a portable breath test to determine his blood alcohol content, Cochran declined, saying to Officer Pritchett "What's the use? You and I both know I'm drunk." (Tr. at 109.) Cochran was subsequently arrested.

On November 7, 2012, the State charged Cochran with Operating a Vehicle While Intoxicated, as a Class A misdemeanor;[4] Driving While Suspended, as a Class A misdemeanor; and Operating a Vehicle While Intoxicated, as a Class D felony. On May 29, 2013, the State amended the charging information to allege that Cochran was a Habitual Substance Offender.

Cochran filed a motion to suppress evidence, contending that Officer Pritchett's stop was unconstitutional. After a hearing on July 17, 2013, the trial court denied the motion on August 2, 2013.

A jury trial was conducted on October 30, 2013. The trial was bifurcated into two phases: a guilt phase related to the charges of Driving While Suspended and Operating While Intoxicated, and an enhancement phase related to the State's allegation that Cochran was a Habitual Substance Offender. During the trial's first phase, the State introduced into evidence certified records from the Indiana Bureau of Motor Vehicles ("BMV") concerning Cochran's driving license history; Cochran objected to the admission of those documents,

---

[4] I.C. § 9-30-5-2(b) (2013).

4

and the trial court overruled the objection. Also during the trial, Cochran renewed his objection to evidence obtained from Officer Pritchett's stop; the trial court overruled this objection, as well.

At the conclusion of the first phase of the trial, the jury found Cochran guilty as charged. Cochran waived a jury trial and pled guilty to his Habitual Substance Offender status.

On November 13, 2013, the trial court entered judgments of conviction as to Driving While Suspended, as a Class A misdemeanor, and Operating While Intoxicated, as a Class D felony; found Cochran to be a Habitual Substance Offender; and sentenced Cochran to an aggregate term of imprisonment of ten years.

This appeal ensued.

## Discussion and Decision

### Motion to Suppress

Cochran's first contention on appeal is that the trial court improperly denied his motion to suppress evidence obtained from Officer Pritchett's traffic stop. Generally, denial of a motion to suppress evidence is reviewed similarly to a challenge to the sufficiency of the evidence. Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013). Where, as here, the case proceeds to trial without an interlocutory review of the trial court's ruling on the motion to suppress, and the defendant timely challenges the admissibility of evidence at trial, an appeal "is best framed as challenging the admission of evidence at trial." Id.

The admission of evidence at trial is generally left to the sound discretion of our trial courts. Id. at 259-60. We review such decisions for an abuse of that discretion. Id. at 260. We reverse only when the admission of evidence is clearly against the logic and effect of the facts and circumstances before the trial court, and the accompanying error affects the substantial rights of a party. Id.

Here, Cochran contends that Officer Pritchett lacked the reasonable suspicion necessary to conduct a traffic stop; Cochran advances this argument based upon both the Fourth Amendment to the United States Constitution and the Indiana Constitution. The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated." This provision was made binding upon the States by the Fourteenth Amendment. The Indiana Constitution provides similar protections. Ind. Const. art. 1 § 11.

The Fourth Amendment is not violated by a brief investigatory stop conducted by an officer with a reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). "Reasonable suspicion is a 'somewhat abstract' concept that is not readily reduced to a 'neat set of legal rules.'" State v. Renzulli, 958 N.E.2d 1143, 1146 (Ind. 2011) (quoting United States v. Arvizu, 534 U.S. 266, 274 (2002)). An officer's "inchoate and unparticularized suspicion or 'hunch'" is not sufficient to support an investigatory stop. Terry, 392 U.S. at 27. Rather, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." Id. at 21.

Reasonable suspicion does not rise to the level of probable cause. Renzulli, 958 N.E.2d at 1146. When reviewing whether a law enforcement officer had reasonable suspicion to conduct an investigative stop, we look to the totality of the circumstances in order to determine whether the law enforcement officer had a particularized and objective basis for suspecting wrongdoing. Id. at 1146-47. Our supreme court has made no substantive distinction between the right afforded by the United States and Indiana Constitutions on the question of the validity of an investigative stop. See, e.g., id. (following U.S. Supreme Court precedent in looking to the totality of the circumstances to determine the existence of reasonable suspicion).

Here, Cochran contends that Officer Pritchett lacked reasonable suspicion to conduct a traffic stop because Officer Pritchett did not testify that he observed Cochran commit any moving violations. Directing us to prior case law, Cochran also argues that the amount of time he spent stopped at a stop sign—one minute—did not amount to a violation of applicable Indiana traffic laws. Absent both these bases for an investigative stop, then, Cochran insists that the results of Officer Pritchett's subsequent investigative work should have been excluded from evidence at trial.

Assuming, without deciding, that Cochran's analysis of traffic statutes is correct, we nevertheless conclude that Officer Pritchett had the requisite particularized and objective facts necessary to sustain his investigative stop of Cochran. In particular, the information Hampton provided to Officer Pritchett established the requisite information. Cochran was personally known to Hampton, as Hampton had socialized with Cochran on several occasions

7

and the two men had a common grandchild. Hampton called police and provided his address and information concerning the appearance of Cochran's pickup truck. When Officer Pritchett, responding to Hampton's call, spoke personally with Hampton, Hampton provided Cochran's name; a more detailed description of the truck's appearance, including its color and general appearance; and information about Cochran's direction of travel. Hampton also indicated that Cochran was too intoxicated to drive. Based on this information, Officer Pritchett was able to quickly locate Cochran's truck and initiate a traffic stop.

In light of the information Hampton provided concerning Cochran's condition, vehicle, and whereabouts, we conclude Officer Pritchett had the reasonable suspicion necessary to conduct an investigatory stop of Cochran. We accordingly find no abuse of discretion in the trial court's admission of the evidence Officer Pritchett obtained as a result of the stop.

Admissibility of BMV Report under Evidence Rule 404(b)

We turn next to Cochran's contention that the trial court abused its discretion when it admitted into evidence the redacted, certified copy of his BMV record.

Cochran challenges the admissibility of this evidence on the basis of Evidence Rule 404(b). The rule provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind. Evidence Rule 404(b)(1) (2014).[5] Cochran contends

---

[5] Rule 404(b), as in effect at the time of trial, was stylistically different but substantively the same: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

8

that the State's Exhibit 1, a redacted copy of his BMV record that obscured all but two reasons for license suspension and all but one described prior offense, served no purpose other than to prove his propensity for engaging in Operating a Vehicle While Intoxicated. The State responds that the BMV report was introduced for the sole purpose of proving both a prior suspension of his driver's license and a prior conviction for Operating a Vehicle While Intoxicated within five years of the charge offense—each of which were necessary elements for offenses charged in the instant case.

This Court has previously addressed the redaction of BMV driving records in several cases, including in Dumes v. State, 718 N.E.2d 1171 (Ind. Ct. App. 1999). In Dumes, the defendant was prosecuted for Operating While Suspended for Life, and a redacted version of his BMV report was admitted into evidence. The document, as admitted, was poorly redacted so that it was possible for jurors to see the entirety of Dumes's driving record. In light of the numerous prior convictions and license suspensions, and a dispute over evidence that placed Dumes's credibility at issue, this Court concluded that the admission of the poorly redacted document—which the Dumes Court regarded as being no better than an unredacted version of the BMV record—was an abuse of discretion that prejudiced Dumes and required that the conviction be reversed.

Here, Cochran does not contend that the BMV report was as poorly redacted as the report in Dumes. Cochran's credibility was never at issue in this case: the State provided two witnesses, Hampton and Officer Pritchett, each of whom testified that Cochran was visibly intoxicated on November 6, 2012. Officer Pritchett testified that Cochran

9

acknowledged as much when Officer Pritchett attempted to administer a portable breath test. Moreover, the trial court issued a limiting instruction indicating that the only purpose to which the BMV report could be put was determining whether the State had proved that Cochran's driving privileges were suspended on the date of his alleged offense. (App'x at 100.) Cochran did not challenge the adequacy of the instruction at trial; failure to object to an instruction at trial waives the propriety of the instruction for appellate review, Halliburton v. State, 1 N.E.3d 670, 678 (Ind. 2013), and we presume the jury to have followed the trial court's instructions. Ware v. State, 816 N.E.2d 1167, 1176 (Ind. Ct. App. 2004). And given the substantial independent evidence of Cochran's intoxication, any error associated with admission of the BMV report was harmless. See Ind. Trial Rule 61 (precluding reversal where an error does not prejudice a party's substantial rights).

We accordingly decline, under Evidence Rule 404(b), to reverse Cochran's conviction for Operating a Vehicle While Intoxicated.

Sufficiency of the Evidence

We turn to Cochran's final contention on appeal, namely, that there was insufficient evidence to sustain his conviction for Operating While Intoxicated in a manner that endangered a person, as a Class A misdemeanor ("Count 1"). The State responds by arguing that there was sufficient evidence to sustain the jury's verdict on Count 1. Moreover, the State notes that the trial court merged Count 1 with Count 3, Operating While Intoxicated, as a Class D felony, rather than enter judgment on the Class A misdemeanor. Thus, Cochran faced no prejudice as a result.

10

"Where the court merges the lesser-included offense without imposing judgment, there is no need to remand on appeal to 'vacate.'" Green v. State, 856 N.E.2d 703, 704 (Ind. 2006). And "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned." Id. (quoting Carter v. State, 750 N.E.2d 778, 781 (Ind. 2001)).

Our review of the record reveals that, during the sentencing hearing, the trial court stated, "Counts 1 [Operating While Intoxicated with endangerment] and 3 [Operating While Intoxicated with a prior conviction as a Class D felony] merge for Operating a Vehicle While Intoxicated, as a D Felony." (Tr. at 305.) However, the trial court went on to state, "Mr. Cochran, you have a right to appeal … the jury's finding of your guilt as to Count 1." (Tr. at 306.) Yet, the trial court entered judgment of conviction and a sentence on Count 3.

Taken together, then, the trial court's statements and the abstract of judgment indicate that the court merged Count 1 into Count 3. Having done so, Count 1 is, as in Green, "unproblematic." Green, 856 N.E.2d at 704. Having had no judgment entered against him on the A Misdemeanor count, Cochran has no basis upon which to appeal that portion of the jury's verdict. We accordingly leave the judgment undisturbed.

**Conclusion**

The trial court did not abuse its discretion when it admitted evidence obtained as a result of Officer Pritchett's investigation. We find no reversible error associated with the trial court's admission into evidence of Cochran's redacted BMV record. No judgment was

11

entered upon the charge of Operating a Vehicle While Intoxicated, as a Class A misdemeanor.

Affirmed.

NAJAM, J., and PYLE, J., concur.