## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2016, 6:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lorenzo Adams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 28, 2016

Court of Appeals Case No. 49A02-1509-CR-1334

Appeal from the Marion Superior Court

The Honorable Carol Ann Terzo, Senior Judge

Trial Court Cause No. 49G10-1503-CM-8679

**Najam, Judge.**

## Statement of the Case

Lorenzo Adams appeals his conviction for carrying a handgun without a license, as a Class A misdemeanor, following a bench trial. Adams raises a single issue for our review, namely, whether the trial court abused its discretion when it admitted into evidence a handgun recovered from his person after a *Terry* stop. We affirm.

## Facts and Procedural History

On March 9, 2015, Indianapolis Metropolitan Police Department ("IMPD") Officer Dominic Smith received a radio dispatch concerning a tip that a resident of the Meadowlark Apartment complex ("Meadowlark") had seen a "person with a gun" in the complex. Tr. at 7. The resident, who identified herself as Edith Williams to the 9-1-1 operator, described the person as having a "[w]hite jacket with red stripes." *Id.* at 7. No further description of the suspect was provided by Williams.

Meadowlark is located in Indianapolis in an area with a "very high" level of crime. *Id.* at 6. Meadowlark, a federally-subsidized complex, has a "no[-]gun policy," and the IMPD is permitted to "trespass anybody from the apartment complex that the apartment complex wants [the IMPD] to trespass." *Id.* at 6. At the time of the dispatch to Meadowlark on March 9, Officer Smith was aware of an incident on March 7, when shots had been fired at Meadowlark.

Two to three minutes after receiving the dispatch, Officer Smith arrived on the scene, and he saw a man wearing a white jacket with red stripes, later identified

as Adams, standing on a sidewalk in the apartment complex. Because Officer Smith had reason to believe that Adams had a gun, Officer Smith drew his gun and approached Adams, who had his hands in his jacket pockets. Officer Smith instructed Adams to "get his hands up." *Id* at 8. Upon hearing that command, Adams began to reach "back a little bit . . . towards his right pocket" before complying and raising his hands. *Id.* at 9. After placing Adams in handcuffs, Officer Smith found a .22 caliber handgun on Adams' person. Adams admitted that he did not have a gun permit.

[5] The State charged Adams with carrying a gun without a license, as a Class A misdemeanor. During a bench trial, Adams moved to suppress the evidence of the handgun, but the trial court denied that motion and found Adams guilty as charged. The trial court sentenced Adams to 365 days with 341 days suspended and twenty-four days credit. This appeal ensued.

## Discussion and Decision

[6] Adams asserts that the trial court erred when it permitted the State to introduce the handgun into evidence. Initially, we address Adams' characterization of Williams as an "anonymous tipster" throughout his brief on appeal. It is undisputed that Williams gave her name to the 9-1-1 operator when she called to report the man with a gun in Meadowlark. Accordingly, depending on the totality of the circumstances of her tip, Williams may be considered a "concerned citizen." As our supreme court has explained,

[a concerned citizen tip] is made up of people who may have been victims of crime or have witnessed a crime. [*Pawloski v. State*, 269 Ind. 350, 380 N.E.2d 1230, 1232 (1978)]. These individuals generally come forward with information out of a spirit of good citizenship and a desire to help law enforcement. *Id.* Some jurisdictions have therefore held informants of this type are considered more reliable. *Id.* In *Kellems [v. State*, 842 N.E.2d 352 (Ind. 2006), *rev'd on other grounds*, 849 N.E.2d 1110 (Ind. 2006)], we again reaffirmed our belief that there "may well be great indicia of reliability in the report of the 'concerned citizen' as distinguished from the 'professional informant'—though again the totality of the circumstances controls." 842 N.E.2d at 356. These concerned citizens are usually one-time informants, and no basis exists from prior contacts to determine their reliability, such as in the case of an undercover police informant. *Kellems*, 842 N.E.2d at 356.

*State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011).

[7]    Here, again, Williams identified herself to the 9-1-1 operator when she called in the tip. Williams described a person wearing a distinctive jacket and armed with a gun in Meadowlark in violation of the no-gun policy. Officer Smith arrived at the scene approximately two or three minutes after Williams' call and found Adams, who was wearing a jacket matching the description given by Williams. We hold that, under the totality of the circumstances, Williams was a concerned citizen tipster.

[8]    Adams' sole contention on appeal is that Officer Smith did not have reasonable suspicion to conduct an investigatory stop under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Both of those constitutional provisions protect citizens from

unreasonable searches and seizures. *See Hathaway v. State*, 906 N.E.2d 941, 944-45 (Ind. Ct. App. 2009), *trans. denied*. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind. 2005). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Id.*

[9] However, in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006). An investigatory stop allows a police officer to "temporarily freeze the situation in order to make an investigative inquiry." *Johnson v. State*, 766 N.E.2d 426, 429 (Ind. Ct. App. 2002), *trans. denied*. A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. *Id.* (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185-89 (2004)). Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind. Ct. App. 1996) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Indiana has adopted the *Terry* rationale in determining the legality of an investigatory stop under Article 1, Section 11. *Id.* Tips from concerned citizens

may justify a *Terry* stop. *See Kellems*, 842 N.E.2d at 355. Still, the test for determining the validity of a *Terry* stop is the totality of the circumstances before the officers. *Id.* at 356.

[10] Based on the totality of the circumstances here, the investigating officer had a reasonable, articulable suspicion that criminal activity was afoot. Officer Smith responded to a 9-1-1 call from Williams, a concerned citizen, and arrived at the scene within two or three minutes. Meadowlark is located in a high-crime area of Indianapolis. According to Williams, a person wearing a white jacket with red stripes was at Meadowlark and had a gun. Officer Smith knew that shots had been fired at Meadowlark only two days prior, and he knew that Meadowlark had a no-gun policy. As soon as Officer Smith arrived, he drew his weapon for officer safety "due to the nature of the call" and "previous incidents in the area." Tr. at 8. Officer Smith then approached Adams and told him to put his hands in the air. Instead of complying with the command, Adams reached for his back pocket. Officer Smith repeated the command, and Adams complied. Officer Smith placed Adams in handcuffs and found a handgun on Adams' person.

[11] Based on the totality of the facts and circumstances known to Officer Smith at the time he detained Adams, we conclude that Officer Smith had a reasonable and articulable suspicion that Adams may have been involved in criminal activity. Accordingly, Officer Smith's *Terry* stop of Adams did not violate Adams' Fourth Amendment rights. *See, e.g.*, *Billingsley v. State*, 980 N.E.2d 402, 411 (Ind. Ct. App. 2012), *trans. denied*. For the same reasons, Adams' claim

under Article 1, Section 11 of the Indiana Constitution must fail. *See id.* Officer Smith's *Terry* stop of Adams was not contrary to law, and the trial court did not abuse its discretion when it admitted the evidence seized pursuant to that stop.

[12] Affirmed.

Robb, J., and Crone, J., concur.