Ken **GUNN**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A02–1102–CR–82.

Court of Appeals of Indiana.

Oct. 24, 2011.

Patricia Caress McMath, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

Appellant Ken Gunn was charged with Class A misdemeanor carrying a handgun without a license. Ind.Code §§ 35-47-2-1 (2007), -23(c) (1997). He brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence. Concluding that the evidence was obtained as the result of an unlawful traffic stop, we reverse.

On June 13, 2010, Officer Robert Wendling of the Indianapolis Metropolitan Police Department was traveling westbound on Gateway Drive when he saw a vehicle, driven by a man later identified as Gunn, making a left turn from westbound Gateway Drive to southbound High School Road. At that location, High School Road is a four-lane road with two lanes in each direction. In making the left turn and entering southbound High School Road, the vehicle did not go into the lane closest to the center line but swung out into the outer lane. Believing that turning left into a lane other than the lane in the right half of the roadway closest to the center line was a traffic infraction, Officer Wendling initiated a traffic stop.

Officer Wendling asked Gunn for his driver's license. He also inquired as a matter of routine whether there were any guns in the vehicle. Gunn responded that he had a gun on his right hip. Officer Wendling removed the gun from Gunn's hip and asked if he had a permit for the gun. Gunn handed Officer Wendling a permit. When Officer Wendling returned to his vehicle, he noticed that the permit had expired just three weeks earlier on May 23, 2010. After verifying with the dispatcher that Gunn had not renewed the permit, Officer Wendling arrested Gunn.

The State charged Gunn with Class A misdemeanor carrying a handgun without a license. In September 2010, Gunn filed a motion to suppress on grounds that the gun was obtained as the result of an illegal traffic stop. The trial court denied the motion after a hearing. Upon Gunn's request, the trial court certified its order for interlocutory appeal, and this Court accepted jurisdiction.

■ Gunn raises one issue, which we restate as: whether the trial court erred by denying his motion to suppress. Specifically, Gunn contends that the traffic stop violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution because Officer Wendling's justification for the stop was invalid. Therefore, his argument continues, any evidence obtained as a result of the stop should be suppressed.

■ Our standard for reviewing the denial of a motion to suppress is well settled. We review such rulings in a manner similar to other sufficiency matters. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the ruling. *Id.* Unlike typical sufficiency reviews, however, we will consider not only the evidence favorable to the ruling but also the uncontested evidence favorable to the defendant.[1] *Powell v.*

---

1. In this regard, the uncontested evidence is not *in conflict* with evidence that supports the

*State,* 898 N.E.2d 328, 334 (Ind.Ct.App. 2008), *trans. denied.* The ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed de novo. *Harper v. State,* 922 N.E.2d 75, 79 (Ind.Ct.App.2010), *trans. denied.*

 The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). A police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity maybe afoot. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Indiana has adopted this analysis for the purpose of determining the legality of an investigatory stop under Article 1, Section 11 of the Indiana Constitution. *See, e.g., State v. Belcher,* 725 N.E.2d 92, 94 (Ind.Ct.App. 2000), *trans. denied; Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994) ("We hold that Article I, § 11 of the Indiana Constitution permits brief police detention of an individual during investigation if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity. The reasonable suspicion requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur.").

 An officer may stop a vehicle when he or she observes a minor traffic violation. *Ransom v. State,* 741 N.E.2d 419, 421 (Ind.Ct.App.2000), *trans. denied.* A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause. *Id.* An officer's decision to stop a vehicle is valid so long as his or her on-the-spot evaluation reasonably suggests that lawbreaking occurred. *Meredith v. State,* 906 N.E.2d 867, 870 (Ind.2009). This discretion, however, does not extend to an officer's mistaken belief about what constitutes a violation as a matter of law. *Id.*

 Here, Officer Wendling initiated the traffic stop after observing Gunn's left turn because he believed Gunn had committed a traffic infraction by turning left into the outer lane instead of into the inner lane closest to the center line. Gunn asserts that the traffic stop was invalid because his left turn complied with the relevant statute. Whether Gunn's left turn constituted a traffic infraction presents an issue of statutory interpretation. The primary purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *Taylor v. State,* 929 N.E.2d 912, 921 (Ind.Ct.App.2010), *trans. denied.* The language of the statute itself provides the best evidence of legislative intent, and we strive to give the words in the statute their plain and ordinary meanings. *Id.*

The manner in which to make a turn at an intersection is governed by Indiana Code section 9–21–8–21 (1991), which provides in pertinent part:

(a) A person who drives a vehicle intending to turn at an intersection must do the following:

. . . .

(2) Make an approach for a left turn in that part of the right half of the

ruling.

roadway nearest the center line of the roadway. After entering the intersection, the person who drives a vehicle must make the left turn so as to leave the intersection to the right of the center line of the roadway being entered.

The statute requires a driver making a left turn at an intersection to leave the first road "in that part of the right half of the roadway nearest the center line" and to enter the second road "to the right of the center line." The statute does not specify which lane the driver must enter if there is more than one lane for traffic in that direction; rather, the only requirement is that the driver must enter a lane to the right of the center line. Officer Wendling initiated the traffic stop for the manner in which Gunn entered High School Road. However, Gunn entered High School Road to the right of the center line and therefore complied with the statute.

The State nonetheless points to subsection (a)(1) of the statute, which requires a driver making a right turn at an intersection to "[m]ake both the approach for a right turn and a right turn as close as practical to the right-hand curb or edge of the roadway." Because subsection (a)(1) requires a driver making a right turn to enter the second road in the closest right lane, the State argues, subsection (a)(2) must require a driver making a left turn to enter the second road in the closest left lane. Reading subsection (a)(2) in this manner, the State continues, "prevents collisions with vehicles on the other side of the intersection turning right into the right hand lane." Appellee's Br. p. 4.

We cannot agree with the State's reading in light of the clear language of the statute providing only that the driver must be "to the right of the center line of the roadway being entered." Moreover, if the legislature intended to require a driver making a left turn to enter the second road in the closest left lane, it could have specified that the driver must leave the intersection "in that part of the right half of the roadway nearest the center line of the roadway" being entered. Indeed, the legislature's use of that language in the first sentence of subsection (a)(2) demonstrates that it knew how to indicate the closest left lane if it wanted to do so.

Absent other circumstances, we acknowledge that adoption of the approach advocated by the State would be conducive to traffic safety. The incidence of collisions between vehicles entering southbound High School Road from westbound Gateway Drive and vehicles entering southbound High School Road from eastbound Gateway Drive would likely be diminished. However, the statute in its present form does not require such conduct in making left turns.

The State alternatively argues that Officer Wendling's good faith belief that Gunn made an improper left turn justifies the stop. The State points to Indiana Code section 34–28–5–3 (1998), which provides, "Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person...." However, although an officer's good faith belief that a person has committed a violation will justify a traffic stop, an officer's mistaken belief about what constitutes a violation does not amount to good faith.[2] *Goens v. State*, 943 N.E.2d 829, 834 (Ind.Ct.App.2011). Such

---

**2.** The State cites the Indiana driver's manual, which states, "To turn left, be in the far left lane for your direction of travel." *Driver's Manual*, Chapter 5, 54 (2011), http://www.in. gov/bmv/files/Drivers_Manual_Chapter_5.pdf (last visited Oct. 5, 2011). Though such advice may constitute wise policy, it is not a law of this state.

discretion is not constitutionally permissible. *Id.; see also Cash v. State,* 593 N.E.2d 1267, 1269 (Ind.Ct.App.1992) ("[S]imple good faith on the part of the arresting officer is not enough. If it were, 'the protections of the Fourth Amendment would evaporate.'" (quoting *Terry,* 392 U.S. at 22, 88 S.Ct. 1868)).

The State recognizes Indiana decisions determining that an officer's mistake of law can never be reasonable but nevertheless asks us to hold that there are certain situations when an officer's good faith belief, later found incorrect, may be objectively reasonable at the time of the officer's assessment and sufficient to justify an investigatory stop. We decline this invitation. Because Officer Wendling's belief that Gunn made an improper turn was a mistake of law, he lacked reasonable suspicion for the traffic stop. *See Goens,* 943 N.E.2d at 833–34 (officer had no reasonable suspicion to stop defendant's vehicle for inoperable stop lamp where statute requires only one functioning stop lamp and vehicle still had two functioning stop lamps and where there was no violation of the good working order statute); *Ransom,* 741 N.E.2d at 422 (officer had no reasonable suspicion to stop defendant's vehicle for driving in reverse where there was no violation of reckless driving statute or obstruction of traffic statute). We therefore conclude that the trial court erred by denying Gunn's motion to suppress.

Reversed.

ROBB, C.J., and BROWN, J., concur.