**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**D. ALAN LADD**
Ladd, Thomas, Sallee & Associates
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1105-CR-529 |
| | ) | |
| RENEE LYNCH, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
The Honorable Teresa Hall, Master Commissioner
Cause No. 49F18-1003-FD-22632

**February 14, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

The State of Indiana appeals the trial court's grant of Renee Lynch's motion to suppress evidence obtained from a traffic stop. Lynch argues that because the police officer did not have reasonable suspicion to initiate the traffic stop, all evidence of her intoxication should be suppressed. We conclude that the officer had reasonable suspicion to stop Lynch because she did not turn left at an intersection from the clearly marked turn-only lane. We therefore reverse the trial court.

**Facts and Procedural History**

The facts in this case are not in dispute. Veteran Indianapolis Metropolitan Police Department Officer Richard Kivett was working the Marion County Drunk Driving Task Force at approximately 1:00 a.m. on March 21, 2010, when he observed Lynch driving east on Washington Street. Officer Kivett explained that at this particular point, Washington Street has five lanes: two east, two west, "and a turn-only lane in the center, for east and west traffic." Tr. p. 15. Officer Kivett said that the turn-only lane is painted on the street with "arrows" and the word "only." *Id.*

According to Kivett, Lynch was driving in the second lane from the right when she "slow[ed] down and ma[d]e a [left] turn . . . to go north on [A]rsenal." *Id.* at 17. In other words, Lynch did not turn left onto Arsenal Street from the turn-only lane. Officer Kivett decided to pull Lynch over "[b]ecause of the fact that she made a left-hand turn from a lane that is clearly for people driving eastbound. There is a center lane that says 'turn-only' for people to turn from to go north on Arsenal at that position, at that point." *Id.* at 19-20. While issuing Lynch a citation for improper turn in violation of local

2

ordinance, Officer Kivett observed signs of intoxication. *Id.* at 21, 23. The State ultimately charged Lynch with five intoxication-related crimes, including two counts of Class D felony operating a vehicle while intoxicated based on a previous conviction within five years.

Lynch filed a motion to suppress all evidence obtained from the traffic stop. She argued that Officer Kivett did not have reasonable suspicion to initiate the traffic stop. An evidentiary hearing was held before a master commissioner following which the court took the matter under advisement. When announcing its decision, the court made the following comments:

> And basically what happened, is the Defendant, per the testimony of the officer, was in the left lane of her traffic flow . . ., she did not go into the turn lane, and she turned left, from that left lane. . . . I don't know what the road looks like. And that – that bothers me. But here's – here's what I'm left with, State, and I don't – I have a motion in front of me, and I don't have evidence that she – other than the officer's belief – I don't have evidence that she . . . did a traffic infraction.

*Id.* at 43-44. After loosely referencing a BMV driving manual that the court had not read in a long time, the court commented that it was "legitimately stuck" on whether Lynch could turn left from that lane and therefore concluded that the State did not meet its burden of proof. Accordingly, it granted Lynch's motion to suppress. *Id.* at 45, 46.

The State now appeals.

**Discussion and Decision**

Pursuant to Indiana Code section 35-38-4-2(5), the State appeals from the suppression of evidence, which effectively precludes further prosecution. In reviewing a trial court's motion to suppress, we determine whether the record discloses "substantial

3

evidence of probative value that supports the trial court's decision." *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (quotation omitted). We do not reweigh the evidence but consider conflicting evidence most favorably to the trial court's ruling. *Id.* When the State appeals from a negative judgment, as here, it "must show that the trial court's ruling on the suppression motion was contrary to law." *Id.* (quotation omitted).

An investigatory stop of a citizen by a police officer does not violate that citizen's constitutional rights if the officer has a reasonably articulable suspicion of criminal activity. *Id.* Reasonable suspicion is a "somewhat abstract" concept that is not readily reduced to a "neat set of legal rules." *Id.* It is well settled, however, that a police officer may briefly detain a person whom the officer believes has committed an infraction or ordinance violation. *Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011) (quotation omitted); *see also* Ind. Code § 34-28-5-3 ("Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a sufficient time . . . ."). An officer's decision to stop a vehicle is valid so long as his or her on-the-spot evaluation reasonably suggests that lawbreaking occurred. *Gunn v. State*, 956 N.E.2d 136, 139 (Ind. Ct. App. 2011). This discretion, however, does not extend to an officer's mistaken belief about what constitutes a violation as a matter of law. *Id.* The determination of reasonable suspicion requires de novo review on appeal. *Gunn*, 956 N.E.2d at 139; *Goens*, 943 N.E.2d at 832.

Lynch does not dispute that she turned left onto Arsenal Street from the second lane from the right instead of the third lane from the right, which was marked turn only

4

for both east and west traffic.  Nevertheless, she claims that her turn was proper according to both local ordinance and state statute.  The State, on the other hand, argues that Lynch violated both local ordinance and state statute when she turned left from the second lane from the right, which therefore "provided all necessary authority for the officer to conduct a traffic stop."  Appellant's Br. p. 3.

There are two applicable provisions which are nearly identical.  Section 441-331 of the Revised Code of the Consolidated City of Indianapolis and Marion County provides:

> The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> * * * * *
>
> (2) *The approach for a left turn shall be made in that portion of the right half of the roadway nearest the centerline thereof* and, after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the centerline of the roadway being entered.

Revised Code, Title II, Chapter 441, Article III, Division 3, Section 441-331, *available at* http://library.municode.com/index.aspx?clientId=12016  (emphasis  added).    Similarly, Indiana Code section 9-21-8-21 provides:

> (a) A person who drives a vehicle intending to turn at an intersection must do the following:
>
> * * * * *
>
> (2) *Make an approach for a left turn in that part of the right half of the roadway nearest the center line of the roadway.*  After entering the intersection, the person who drives a vehicle must make the left turn so as to leave the intersection to the right of the center line of the roadway being entered.

5

(Emphasis added). The parties dispute what "center line" means in the context of a five-lane road with the middle lane designated as a turn-only lane for both directions of travel. Center line is not defined for purposes of either Revised Code Section 441-331 or Indiana Code section 9-21-8-21. Thus, whether someone can turn left at an intersection from a lane to the right of a designated turn-only lane presents an issue of statutory construction. The primary purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *Gunn*, 956 N.E.2d at 139. The language of the statute itself provides the best evidence of legislative intent, and we strive to give the words in the statute their plain and ordinary meanings. *Id.* A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the select reading of individual words. *Prewitt v. State*, 878 N.E.2d 184, 186 (Ind. 2007). We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Although at this point Washington Street has five lanes and therefore no true center line, we can still determine what the center line means for purposes of Section 9-21-8-21 based on other provisions in Chapter 8 and the statute's underlying policy and goals. We start with Indiana Code section 9-21-8-11, which provides rules for roadways divided into three or more clearly-marked lanes:

> Whenever a roadway has been divided into three (3) or more clearly marked lanes for traffic, the following rules apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from the lane until the person who drives the vehicle has first ascertained that the movement can be made with safety.

(2) Upon a roadway that is divided into three (3) lanes, a vehicle may not be driven in the center lane except under any of the following conditions:

> (A) When overtaking and passing another vehicle where the roadway is clearly visible and the center lane is clear of traffic within a safe distance.

> (B) In preparation for a left turn.

> (C) Where the center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is signposted to give notice of the allocation.

*(3) Official signs may be erected* directing slow-moving traffic to use a designated lane or *allocating specified lanes to traffic moving in the same direction. A person who drives a vehicle shall obey the directions of each sign.*

(Emphases added). Here, the middle of the five lanes was painted "turn only" for both east and west traffic, thereby directing drivers to turn from that lane. Because Washington Street has an odd number of lanes at this point with the center lane designated for both directions of travel, the center line must be different for each direction of travel. That is, when driving east, the center line would be the left or outermost line of the turn-only lane (the north line).

This is further supported by Indiana Code section 9-21-8-8, which governs driving to the left side of the roadway. Specifically, Section 9-21-8-8 provides that a vehicle may not be driven to the left side of the roadway when approaching or traversing an intersection. Ind. Code § 9-21-8-8(b). Thus, if the center line was determined to be the line separating the turn-only lane and the second lane from the right (as opposed to the left or outermost line of the turn-only lane), drivers could not cross that line in order to

turn left at an intersection from the turn-only lane because they would be driving on the left side of the roadway.

Although Lynch posits that "the center line could be the middle lane as a whole," Appellee's Br. p. 5, this and any other construction does not comport with the purpose of our traffic code, which is to safely regulate traffic. If a driver traveling east were allowed to turn left at an intersection from the second lane from the right as opposed to the third lane from the right which was designated as a turn-only lane, two drivers traveling east could be turning left at the same intersection and at the same time, causing a collision. We do not think this was our legislature's intent. Accordingly, when there is a designated turn-only lane for two directions of traffic, the center line is the outermost line of the turn-only lane for that direction of traffic. Lynch therefore committed an infraction when she did not turn left at Arsenal Street from the turn-only lane. *See* I.C. § 9-21-8-21 ("Make an approach for a left turn in that part of the right half of the roadway nearest the center line of the roadway."). Because Officer Kivett did not have a mistaken belief about what constituted a violation of either Section 9-21-8-21 or Revised Code 441-331, reasonable suspicion existed for him to initiate a traffic stop of Lynch. We therefore reverse the trial court's grant of her motion to suppress.

Reversed and remanded.

ROBB, C.J., and NAJAM, J., concur.

8