## FOR PUBLICATION



**FILED**

Oct 16 2013, 5:31 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CARL CROOM,                              )
                                         )
    Appellant-Defendant,            )
                                         )
        vs.                     )     No. 49A05-1304-CR-144
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
The Honorable Christina Klineman, Judge Pro Tempore
Cause No. 49G05-1208-FC-55969

**October 16, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Indianapolis Metropolitan Police Department Officer Bryan Zotz stopped Carl Croom after a search of his interim dealer license plate revealed that there was no registration information in the database. When the officer stopped Croom, the officer discovered that Croom's driving privileges had been forfeited for life and arrested him. Croom had a bench trial and was convicted. Croom appeals his conviction for Class C felony operating a motor vehicle after his driving privileges had been forfeited for life. He argues that the officer did not have reasonable suspicion under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution that his interim dealer license plate was unregistered. Finding that the officer had reasonable suspicion to conduct an investigatory traffic stop because the officer mistakenly believed that all of the old interim dealer license plates had expired, we affirm.

**Facts and Procedural History**

On August 13, 2012, Officer Zotz was routinely patrolling 30th Street in Indianapolis. A white Chevrolet Impala was stopped at a red light in front of the officer with an Indiana interim dealer license plate. The officer performed a check of the license plate in the police's electronic database. According to Officer Zotz, "a temporary plate raises more red flags than usual. A lot of times temporary plates may be stolen off of properly registered or purchased cars and placed on a stolen vehicles [sic] or people who don't want to register their cars." Tr. p. 31. He performed the check of the license plate

because he "was stopped behind the car and it was a car in front of [the officer]." *Id.* at 29.

Although the search of the license-plate number revealed that the car was not stolen, it showed that the interim license plate was not on file with the Indiana Bureau of Motor Vehicles (BMV). According to Officer Zotz:

> [T]here can be several reasons a plate will come back not on file. It could be that the BMV has just failed to enter the plate properly into the system, it could be that the plate is no longer a valid plate. It could be a counterfeit plate, it could be a plate that's been stolen. It could be that the plate never actually existed. There's a bunch of reasons.

*Id.* at 30.

Croom had a valid interim dealer license plate.[1] Two and one-half months before the stop, the State linked newly issued interim dealer plates to the National Law Enforcement Telecommunications System, which placed the new interim dealer plates in the BMV system and allowed road officers to have access to the information.[2] Croom's plate was not linked to the new system. Dealers had maintained a stockpile of old interim plates and were permitted to continue to issue the old plates to new car buyers. Croom had such a validly issued old plate that would not have been on file in the new system.

---

[1] Under Indiana law, car dealers are issued interim dealer license plates by the Secretary of State. Ind. Code Ann. § 9-18-26-10 (West 2012). The legislature repealed this statute effective July 1, 2013. Interim dealer plates are now governed by Indiana Code section 9-32-6-11.

[2] The new system "greatly reduc[ed] the appeal of Indiana plates for illegal purposes." *Auto dealer plates now linked to national law enforcement database*, IN.gov, http://www.in.gov/activecalendar/EventList.aspx?fromdate=5/24/2012&todate=5/24/2012&display= Day&type=public&eventidn=56885&view=EventDetails&information_id=114231 (last visited Sept. 24, 2013).

Because Officer Zotz needed more information to determine why Croom's registration information was not in the system, he stopped Croom. When he approached the car, Croom gave him an Indiana identification card. Officer Zotz returned to his car and checked Croom's information in the database, revealing that Croom's driving privileges had been forfeited for life. Officer Zotz then arrested Croom and took him to jail.

The State charged Croom with Class C felony operating a motor vehicle after his driving privileges had been forfeited for life. Before trial, Croom filed a motion to suppress the evidence obtained from the traffic stop, because, he argued, Officer Zotz had no reasonable suspicion to stop him. Appellant's App. p. 30-31. The trial court denied the motion to suppress.

A bench trial was conducted before a different judge. At trial, the parties stipulated that Croom's license plate was an interim dealer plate validly issued by Amber Motors and still valid at the time of the traffic stop. Ex. 1. When Officer Zotz was asked about Croom's identification card, defense counsel objected and showed a standing objection based upon the invalid stop. At the conclusion of trial, defense counsel objected again based on his previous motion to suppress. The trial court stated that it assumed that the motion to suppress was denied "based on a good faith exception. Given that, I'm not going to overrule the presiding judge's ruling in this case." Tr. p. 60. The trial court found Croom guilty of Class C felony operating a motor vehicle after his driving privileges had been forfeited for life.

Croom now appeals.

4

**Discussion and Decision**

Croom contends that his traffic stop violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. This Court reviews admission of evidence for an abuse of discretion. *Peters v. State*, 888 N.E.2d 274, 277 (Ind. Ct. App. 2008), *trans. denied*. We will reverse a trial court's decision when it "is clearly against the logic and effect of the facts and circumstances before it." *Id.* We do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, the question of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 691 (1996); *Yanez v. State*, 963 N.E.2d 530, 532 (Ind. Ct. App. 2012).

**I. Fourth Amendment**

Croom argues that the trial court erred in denying his motion to suppress under the Fourth Amendment of the United States Constitution. The Fourth Amendment provides protection against unreasonable searches and seizures of a person. *Clark v. State*, --- N.E.2d ---, ---, No. 20S05-1301-CR-10, slip. op. at 7 (Ind. Sept. 17, 2013). A traffic stop of a vehicle is also a "seizure" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). For a search or seizure to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). The State bears the burden of proof of showing that a warrantless search or seizure is within an exception to the warrant requirement. *Id.*

5

A brief investigatory stop may occur when justified by a reasonable suspicion that the person stopped is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 31 (1968). In determining reasonable suspicion, we must examine "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The reasonable-suspicion requirement is met "where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur." *L.W. v. State*, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010), *reh'g denied*. In the context of an investigatory stop, an officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests lawbreaking occurred. *Gunn v. State*, 956 N.E.2d 136, 139 (Ind. Ct. App. 2011). Reasonable suspicion must be more substantial than an officer's unparticularized suspicion or "hunches." *Clark*, --- N.E.2d. at --- , slip. op. at 13.

At the time of Croom's arrest there were two types of interim dealer plates.[3] New plates were linked to the National Law Enforcement Telecommunications System and old plates were not linked to any system. The old plates continued not to be on file with the

---

[3] At the hearing on the motion to suppress, there was considerable confusion about which statute applied to this case and the type of plate on Croom's car. In Indiana, there are three types of paper license plates: temporary registration permits, temporary license plates, and interim dealer plates. Failure to properly register a car results in a Class C infraction. Ind. Code § 9-18-2-40(b). The State incorrectly referred to the statute governing a registration permit. A temporary registration permit may be requested if one of five conditions exist, none of which were satisfied here. *Id.* § 9-18-7-1(b). However, on appeal, the State agrees with defense counsel that the State applied the incorrect statute at the trial level. Appellee's Br. p. 10-11.

National Law Enforcement Telecommunications System, whereas new plates would return registration information.

However, Officer Zotz believed that the interim dealer plate in question could only be one of the newer plates because the old plates would have already expired since they are only valid for thirty days and the new system had been in effect for over two months. As he testified at trial:

> Q: Officer, prior to the recent law change in 2012, weren't all temporary plates[4] not on file with the BMV?
> A: Yes.
> Q: Okay, and so only, it was only recently in 2012 that you were able to get a registration from those plates.
> A: Yes.
> Q: And in this case could you tell if this was an old plate or a new – or one of the new ones?
> A: *BMV only issues temporary plates for 30 days. Looking at the plate I could not tell whether or not it was current or valid or anything like that. The only way to know is to run it and find out*.
> Q: So you weren't – you weren't sure if this was one of the old plates they used to issue or one –
> A: There's, there's no way to know, no.

Tr. p. 32 (emphasis added).

Given what Officer Zotz knew at the time, there are two possible alternatives. The first alternative is that the interim dealer plate was new and should have been in the database. In this case, Croom was committing an infraction and Officer Zotz would be justified in stopping him. The second alternative is that the interim dealer plate was old and therefore was not in the database. In this case, Croom was not doing anything wrong and Officer Zotz would not be justified in stopping him.

---

4 Although Zotz is referring to "temporary plates" here, it is clear based upon the discussion and applicable law that he was actually referring to interim dealer plates.

But because the officer believed all interim dealer plate information was linked to the system, he thought the registration information should have been in the database.

It is well-settled that "a police officer may briefly detain a person whom the officer believes has committed an infraction or ordinance violation." *State v. Lynch*, 961 N.E.2d 534, 536 (Ind. Ct. App. 2012). In *Sanders*, the Indiana Supreme Court held that a police officer's mistaken belief that the defendant had violated the window-tint statute was sufficient to establish reasonable suspicion to detain the defendant even if the defendant later proved that he did not violate the statute. *Sanders v. State*, 989 N.E.2d 332, 336 (Ind. 2013), *reh'g denied*. In that case, our Supreme Court held that the officer had reasonable suspicion to detain the defendant because the officer could not clearly recognize the occupants inside the car. Although the defendant's expert proved that the tint complied with the statute, the Court concluded that the officer had reasonable suspicion to stop the car. The Court reasoned that the inability to see the occupants inside coupled with the fact that the tint was close to the statutory limit was enough to establish a good-faith belief that a violation occurred.

Similarly, Officer Zotz had reasonable suspicion to initiate the traffic stop. Officer Zotz performed a search in a database where registration information was stored. A search of the database for Croom's interim dealer license plate yielded no registration information, which ordinarily indicates that the car is not properly registered. Because Officer Zotz believed that interim dealer license plates expire after thirty days, he did not think any of the old dealer plates still existed and reasonably expected Croom's registration information to appear in his search of the database. This was a mistaken

8

belief. Indeed, he testified that after no registration information was found in the database, he could not "determine anything else without initiating a traffic stop and determining whether or not there's any paperwork or anything associated." Tr. p. 45-46.

Like the police officer in *Sanders*, Officer Zotz was concerned that Croom was breaking the law and reasonably stopped Croom in order to get more information. The only way for Officer Zotz to determine whether Croom was compliant with the law was to initiate a traffic stop. Because Officer Zotz believed that an interim dealer license plate would only be valid if it was in the newly searchable system, the lack of registration information established reasonable suspicion for the traffic stop. The Supreme Court's decision in *Sanders* compels us to find that Officer Zotz's good-faith reasonable belief that a violation occurred was sufficient to establish reasonable suspicion under the Fourth Amendment.

## II. Article 1, Section 11 of the Indiana Constitution

Croom also argues that the trial court erred in denying his motion to suppress under Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution is identical to the Fourth Amendment, but is analyzed differently. Indiana Constitutional analysis focuses on the reasonableness of police conduct under the totality of circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). We determine reasonableness under the Indiana Constitution by balancing "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361. The protection against unreasonable

9

searches and seizures includes seizure of a person. *State v. Atkins*, 834 N.E.2d 1028, 1034 (Ind. Ct. App. 2005), *trans. denied*. The State has the burden of proving that the search was reasonable under the totality of the circumstances. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).

A brief investigatory stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Id*; *see also State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011). Such suspicion "exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity is or is about to occur." *Id.*

Officer Zotz's stop was reasonable under the Indiana Constitution. The degree of concern, suspicion, or knowledge that a violation occurred was high in this case. Officer Zotz's search of the database revealed no registration information. He had searched for and received registration information in the database previously. Moreover, he believed all old interim dealer license plates already expired because they are only valid for thirty days and the new system had been in effect for over two months. The lack of registration information made him suspicious that Croom's car was not validly registered. Second, the degree of intrusion was slight. Officer Zotz only stopped Croom briefly to ask him about the registration status of his vehicle. *See, e.g.*, *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind. 2001) (stating that Article 1, Section 11 does not prohibit police from conducting a justified traffic stop). Finally, the needs of law enforcement were reasonable. Officer Zotz stated that the only way to determine the validity of the plate was to stop Croom, ask questions, and examine the associated paperwork. Tr. p. 46. The

10

stop was an appropriate manner of enforcing traffic laws. *See State v. Washington*, 898 N.E.2d 1200, 1206 (Ind. 2008). Balancing the high degree of concern, suspicion, or knowledge that a violation occurred and the needs of law enforcement against the low degree of intrusion, we conclude that Officer Zotz had reasonable suspicion under Article 1, Section 11. Therefore, we affirm the trial court's decision to admit the evidence obtained from the traffic stop.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.