## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2015, 6:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kezalis Harris, *Appellant-Defendant,* | November 18, 2015 |
| v. | Court of Appeals Case No. 49A04-1503-CR-128 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Steven Rubick, Magistrate |
| | Trial Court Cause No. 49G19-1409-CM-44609 |

**Vaidik, Chief Judge.**

# Case Summary

Kezalis Harris's car was stopped by police because the car's license plate was improperly displayed. As the police officer approached Harris's car on foot, he observed a temporary license plate in the rear window of the car; he also saw Harris pour a liquid out of the car window, smelled the odor of alcohol coming from the car, and found that Harris was "aggravated" and said repeatedly that the officer had stopped him for no reason. Harris ultimately consented to a chemical breath test, the result of which was 0.129. Harris was charged with Class C misdemeanor operating a vehicle while intoxicated and Class C misdemeanor operating a vehicle with an ACE of .08 or more.[1] At trial, Harris filed a motion to suppress the evidence of intoxication, arguing that the police officer lacked reasonable suspicion to stop him. Because the evidence shows that Harris's temporary license plate was improperly displayed, we find that the police officer had reasonable suspicion to stop the car, and thus we affirm the denial of the motion to suppress.

# Facts and Procedural History

In September 2014, Officer David Wooten of the Indianapolis Metropolitan Police Department was on patrol duty when he saw a car driving eastbound on 10th Street with no visible license plate in the license-plate holder on the back of

---

[1] ACE stands for "alcohol concentration equivalent," as in, "an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol . . . ." Ind. Code § 9-30-5-1.

the car. When the car started to turn, Officer Wooten activated his emergency lights for a traffic stop. Once he had stopped the car and approached on foot, the officer could see that there was, in fact, a temporary license plate in the left-side rear window of the car. Officer Wooten also saw Kezalis Harris, the driver of the car, "pouring a liquid out of the vehicle window." Tr. p. 13. The officer detected "the odor of alcohol coming from the vehicle." *Id*. at 14. Harris seemed "aggravated . . . [k]ept saying I stopped him for no reason." *Id*. at 15.

[3] Officer Wooten requested Harris's information and then walked back to his car to request a DUI car from dispatch. IPD Sergeant Michael Duke responded to the call and asked Harris to step out of the car so he could conduct a Horizontal Gaze Nystagmus test on him. Harris continued to protest that there was "no reason for [the police] to be talking to [him] at all" and Sergeant Duke observed that Harris had red and glassy eyes and the odor of an alcoholic beverage on his breath. *Id*. at 20. After Harris was unable to perform the walk-and-turn test and took a portable breath test, Sergeant Duke advised Harris of Indiana's Implied Consent Law and Harris agreed to take a chemical breath test. The test result was 0.129, and Sergeant Duke placed him under arrest.

[4] The State charged Harris with Count I, Class C misdemeanor operating a vehicle while intoxicated; and Count II, Class C misdemeanor operating a vehicle with an ACE of .08 or more. At a bifurcated bench trial in January and March 2015, Harris moved to suppress evidence of his intoxication, arguing that Officer Wooten did not have reasonable suspicion to stop Harris's car because his license plate was in a valid location. The trial court denied Harris's

motion to suppress. Following the admission of evidence, Harris was found guilty as charged. Harris now appeals.

# Discussion and Decision

[5] On appeal, Harris argues that the traffic stop violated his Fourth Amendment rights because Officer Wooten's stated justification for the stop—that there was no license plate in the car's license-plate holder—was based on what Harris characterizes as a "mistaken belief of the law" regarding the proper display of license plates. Appellant's Br. p. 6. Because Officer Wooten lacked reasonable suspicion to stop the car, the argument continues, the evidence of Harris's intoxication was improperly admitted and should have been suppressed. We disagree.

[6] This Court reviews admission of evidence for an abuse of discretion. *Croom v. State*, 996 N.E.2d 436, 439 (Ind. Ct. App. 2013), *reh'g denied*. We will reverse a trial court's decision when it is clearly against the logic and effect of the facts and circumstances before it. *Id*. We do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, the question of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed de novo. *Id*. at 439-40.

[7] Harris argues that the trial court erred in denying his motion to suppress under the Fourth Amendment of the United States Constitution. The Fourth Amendment provides protection against unreasonable searches and seizures of

a person. *Id.* at 440. A traffic stop of a vehicle is also a "seizure" within the meaning of the Fourth Amendment. *Id.* But a brief investigatory stop may occur when justified by a reasonable suspicion that the person stopped is involved in criminal activity. *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 31 (1968)). In determining reasonable suspicion, we must examine the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* (quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002)). In the context of an investigatory stop, an officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests law-breaking occurred. *Id.* "It is well-settled that a police officer may briefly detain a person whom the officer believes has committed an infraction or an ordinance violation." *Goens v. State*, 943 N.E.2d 829, 832 (Ind. Ct. App. 2011) (quoting *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind. Ct. App. 2005), *trans. denied*).

[8] Here, we find that Officer Wooten had reasonable suspicion to stop Harris's car because his temporary license plate was improperly displayed. License plates, including temporary license plates, are statutorily required to be displayed upon the rear of the vehicle, securely fastened, in a horizontal position, and illuminated by a white light so as to be clearly visible from fifty feet. Ind. Code § 9-18-2-26 (providing that license plates, including temporary license plates, shall be displayed upon the rear of the vehicle and securely fastened in a horizontal position to the vehicle for which the plate is issued); Ind. Code § 9-19-6-4(e) ("Either a tail lamp or a separate lamp must be placed and constructed

so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear."); *Merritt v. State*, 829 N.E.2d 472, 476 (Ind. 2005) ("Together, these provisions require that the license plate be displayed upon the rear of the vehicle, securely fastened, in a horizontal position, and also be illuminated at night by a separate white light so as to be clearly legible from fifty feet."). The evidence shows that Harris's temporary plate was located inside the rear window of the car. Because this is an improper license-plate display, Officer Wooten had reasonable suspicion to stop the car. *Houston v. State*, 898 N.E.2d 358, 361 (Ind. Ct. App. 2008) ("[N]on-compliance with the Indiana statutory requirements concerning placement, secure attachment, illumination and legibility of a license plate may serve as a basis for reasonable suspicion for law enforcement officers to make a traffic stop to ascertain whether the display fully complies with all statutory requirements."), *trans. denied*.

[9] Harris maintains on appeal, as he did at trial, that Indiana Code section 9-32-6-11, which governs "interim plates," is somehow relevant to this matter.[2] That statute provides that it is permissible to display an interim plate in the following manner: affixed to "the left side of a window facing the rear of the motor

---

[2] In Indiana, there are three types of paper license plates: temporary registration permits, temporary license plates, and interim dealer plates. *Croom*, 996 N.E.2d at 440 n.3. According to statute, only interim plates can be displayed in the rear window of a car. The reason for this exception is not clear, and this is an area of law that the legislature may want to reconsider. In any event, Officer Wooten testified unambiguously at trial that Harris had a "temporary plate." *See* Tr. p. 7, 9.

vehicle that is clearly visible and unobstructed." Ind. Code § 9-32-6-11. Harris does not argue that his license plate was an interim plate; instead he contends that Officer Wooten did not have a "good-faith belief" that Harris's plate was improperly displayed because the officer did not "run the plate at any time to determine whether it was an interim or temporary plate." Appellant's Br. p. 9. Leaving aside the fact that Officer Wooten testified he couldn't see *any* license plate on Harris's car at the time of the traffic stop, Harris's argument is inapposite because the evidence shows that Harris's plate was an improperly displayed temporary—not interim—license plate, and thus Section 9-32-6-11 is irrelevant.

[10] In light of the above, we affirm the trial court's denial of Harris's motion to suppress, finding that there was no Fourth Amendment violation here because Officer Wooten had reasonable suspicion to stop Harris's car.

[11] Affirmed.

Robb, J., and Pyle, J., concur.